UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:07-CV-016-KKC

ELECTROLUX HOME PRODUCTS, INC.,
et al.,                                                                                           PLAINTIFFS,

v.                                    **OPINION AND ORDER**

MID-SOUTH ELECTRONICS, INC., et. al.                                        DEFENDANTS.

This matter is before the Court on the Verified Motion by Defendants to Refer this Case to Mediation and/or Arbitration (Rec. No. 9) filed by the Defendants Mid-South Electronics, Inc. (Kentucky), Mid-South Electronics, Inc. (Alabama), Mid-South Product Engineering, Inc., Stamped Products, Inc. and Mid-South Industries, Inc. (collectively, the "Defendants"). For the following reason, the Court will GRANT the motion to compel this action to arbitration.

**I.     BACKGROUND.**

**A.     The Complaint.**

The Plaintiffs, Electrolux Home Products, Inc. and Equinox Insurance Company, Inc., filed this action against the Defendants asserting that, on or about December 19, 2002, the Defendants, Mid-South Electronics, Inc. (Kentucky); Mid-South Electronics, Inc. (Alabama); Mid-South Product Engineering, Inc.; and Stamped Products, Inc. (collectively, "Mid-South") entered into a contract with Electrolux by which Mid-South agreed to produce icemaker kits for installation into refrigerators to be sold by Electrolux. (Rec. No. 1, Complaint, ¶ 7).

The Plaintiffs asserts that the remaining defendant, Mid-South Industries, Inc., is the successor in interest to Mid-South and the parent company of Mid-South. (Rec. No. 1, Complaint, ¶ 4)

On or about January 15, 2002, a fire occurred at Mid-South's plant. (Rec. No. 1, Complaint, ¶ 14). The Plaintiffs assert that as a result of the fire, Mid-South failed to deliver the icemaker kits to Electrolux and Electrolux suffered business interruption, lost profits, and increased costs "as Mid-South failed to manufacture and supply the icemaker kits as provided under the Contract." (Rec. No. 1, Complaint, ¶ 19).

The Plaintiffs assert that Equinox, pursuant to its insurance policy with Electrolux, has paid Electrolux $3 million to cover its losses in property damage and business interruption caused by the fire. (Rec. No. 1, Complaint, ¶ 20).

In Count One of their Complaint, the Plaintiffs assert a negligence claim against Mid-South, asserting that Mid-South had a "duty to exercise due care in operating The Plant and safe-guarding the property and business expectations of Electrolux pursuant to The Contract and a duty to exercise due care in ensuring that the property and business expectations of Electrolux were not damaged, destroyed, or hampered due to a fire." (Rec. No. 1, Complaint, ¶ 23). The Plaintiffs assert that Mid-South breached that duty. In Count Two of their Complaint, the Plaintiffs assert that Mid-South should be found liable for negligence under the res ipsa loquitur doctrine.

In Count Three of their Complaint, the Plaintiffs assert a negligence claim against Mid-South Industries, asserting that, as the parent company of Mid-South, it is responsible for Mid-South's negligent acts and omissions. (Rec. No. 1, Complaint, ¶ 37). In Count Four of their Complaint, the Plaintiffs assert a negligence claim under the res ipsa loquitur doctrine against Mid-South Industries, again asserting that, as the parent company of Mid-South, Mid-South Industries is responsible for Mid-South's acts and omissions. (Rec. No. 1, Complaint, ¶ 45).

2

**B.     The Motion to Arbitrate.**

The Defendants moved to refer this case to mediation and/or arbitration (Rec. No. 9), relying on the arbitration provision of the contract between Mid-South and Electrolux. The parties then jointly moved to stay the case pending mediation. (Rec. No. 13). The Plaintiffs reserved their right to object to the Defendants' motion to arbitrate. The Court granted the motion and ordered that the Plaintiffs file their response to the Defendants' motion to refer case to arbitration within 20 days from the date the parties' reported on the outcome of the mediation. The parties then filed a joint status report (Rec. No. 27) stating that the mediation was unsuccessful.

The Plaintiffs then filed a response to the Defendants' motion to refer this case to arbitration, arguing that this is not a dispute which relates to the agreement or its breach. The Plaintiffs also argue that Equinox was not a party to the agreement at issue and, thus, has no obligation to arbitrate its claims. The Defendants have filed a Reply and the motion to refer this case to arbitration is now ripe for this Court's review.[1]

**II.     ANALYSIS.**

Both parties agree that the arbitrability of the Plaintiffs' claims is governed by the Federal Arbitration Act. *See Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983) (federal law in the terms of the Arbitration Act governs the issue of arbitrability where a contract is governed by the act). This is so despite the fact that the agreement contains a choice-of -law clause providing that it shall be governed by and interpreted under the law of the State of Georgia. *Matrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995) ("the choice-of-law provision

---

[1] The Defendants' motion that, as an alternative to their request for arbitration, this matter be referred to mediation will be denied as moot because, since the filing of the motion, the parties have unsuccessfully mediated this case.

3

covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other."); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk*, 585 F.2d 39, 43 & n.8 (3rd Cir. 1978); *Long v. Silver*, 248 F.3d 309, 316 n.4 (4th Cir. 2001); *Westbrook Int'l, LLC v. Westbrook Technologies, Inc.*, 17 F.Supp.2d 681, 685 (E.D.Mich.1998) ("all authorities seem to indicate that the law of the forum court should apply to determine arbitrability, and federal cases interpreting the FAA do not recognize an exception to arbitrability for tort claims");

The Federal Arbitration Act creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses*, 460 U.S. at 24. Under the FAA there is a strong presumption favoring arbitration and any doubts regarding arbitrability must be resolved in favor of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005). "This policy, however, is not so broad that it compels the arbitration of issues not within the scope of the parties' arbitration agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008). "Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Id*. (quoting *Bratt Enterprises, Inc. v. Noble Intern. Ltd.*, 338 F.3d 609, 612 (6th Cir.2003)).

There is no dispute here that a valid agreement to arbitrate exists between Electrolux and the Defendants. The Plaintiffs dispute whether their claims are within the scope of that agreement. The arbitration clause specifically provides, in pertinent part, the following:

> If a dispute relates to this agreement, or it[s] breach, and the parties have not been successful in resolving such disputes through negotiation, it is agreed by the parties that they will attempt to resolve the dispute by submitting the dispute to a mediator

4

> mutually selected by the parties. Each party shall bear it own expenses and an equal share of the fees and expenses of the mediator.
>
> In the event that any dispute can not be resolved within 30 days through mediation, the parties agree within 30 days to settle any such claim or dispute by arbitration in accordance with the rules of the American Arbitration Association.

At the very least then the parties agreed to arbitrate disputes which "relate[] to this agreement, or it[s] breach." This is how the Plaintiffs interpret the clause. (Rec. No. 28, Pfs.' Response at 5). Thus, the arbitration provision is a broad one, encompassing all disputes related to the agreement, including but not limited to its breach. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967)(stating that arbitration clause was broad that provided that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration"); *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 448 n.3, 450 (6th Cir. 2005)(finding arbitration clauses broad that provided that "[a]ny controversy arising out of or relating to [the appellee's] accounts. . .shall be settled by arbitration"); *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926, 931, 937 (6th Cir. 1998) (describing arbitration clause as "conspicuously broad" that provided that "all controversies and claims arising out of or relating to this Agreement, or the breach of this Agreement shall be settled by arbitration").

  A.  **Whether Tort Claims are Excluded from Arbitration.**

Where an arbitration clause is broadly written, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Watson*, 513 F.3d at 650 (quoting *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir.2003)). "[B]roadly written arbitration clauses must be taken at their word and extend to

5

situations that fall within their purview." *Id*.

"Under the Federal Arbitration Act, we generally construe broad language in a contractual arbitration provision to include tort claims arising from the contractual relationship, and we compel arbitration of such claims." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499-500 (8th Cir. 2007). *See Federated Dept. Stores, Inc. v. J.V.B. Industries, Inc.*, 894 F.2d 862, 869 (6th Cir. 1990)(holding that arbitration clause encompassed a tort claim where clause provided that "[a]t owner's option, all claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents, or the breach thereof ... shall be decided by arbitration."). A claim, regardless of the legal label assigned to it, falls within the scope of a clause requiring arbitration of "any dispute" if the allegations underlying the claim or its defenses involve matter covered by the agreement. *First Union Real Estate Equity and Mortg. Investments v. Crown American Corp.*, 23 F.3d 406, at * 3 (6th Cir. 1994).

Thus, unless the agreement between the parties contains some indication that the parties intended to exclude Electrolux's tort claims from the scope of the arbitration clause, this Court cannot find that tort claims are per se inarbitrable. The Plaintiffs have not pointed to any such limiting language in the agreement. Under the most restricted reading of the arbitration clause, the parties agreed to arbitrate all disputes that relate to the agreement, *or its breach*. The use of the word "or" indicates that the parties agreed that all claims relating to the agreement would be arbitrated, not simply breach of contract claims. Accordingly, the Court cannot find that the parties intended to exclude tort claims from the scope of the arbitration clause.

   **B.   Whether Electrolux's Claims "Relate to" the Agreement, or its Breach.**

The next issue is whether Electrolux's claims fit within the language of the arbitration clause.

In making this determination, the Court must determine if it can resolve Electrolux's claims "without reference to the agreement containing the arbitration clause. If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise." *NCR Corp. v. Korala Associates, Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008)(citation omitted).

In Count One of the Complaint, the Plaintiffs assert a negligence claim against Mid-South, alleging that Mid-South breached a duty to the Plaintiffs, "including the duty to exercise due care in operating The Plant and safe-guarding the property and business expectations of Electrolux pursuant to The Contract and a duty to exercise due care in ensuring that the property and business expectations of Electrolux were not damaged, destroyed, or hampered due to a fire." (Rec. No. 1, Complaint, ¶ 23). This claim cannot be resolved without reference to the agreement between the parties because the Plaintiffs assert that Mid-South's duty to it arose from that agreement.

"[A] party cannot avoid arbitration simply by renaming its claims so that they appear facially outside the scope of the arbitration agreement." *Simon v. Pfizer Inc.*, 398 F.3d 765, 776 (6th Cir. 2005). In determining the arbitrability of claims, the court should "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir.1987).

The gravamen of the Plaintiffs' Complaint is that "[a]s a direct and proximate result of The Fire, property of Electrolux was damaged and Electrolux suffered business interruption, lost profits, and increased costs, as Mid-South failed to manufacture and supply the icemaker kits as provided under the Contract." (Rec. No. 1, Complaint ¶ 19). With their negligence claim, the Plaintiffs are asserting that they were damaged because Mid-South failed to deliver the ice-makers to them as they

were required to do under the agreement. These are precisely the same allegations that the Plaintiffs would make in a breach of contract claim, which would clearly be arbitrable. Thus, the negligence claim relates to the agreement and is arbitrable.

In Count Three of the Complaint, the Plaintiffs assert a negligence claim against Mid-South Industries, asserting that Mid-South Industries is the successor in interest to Mid-South and, thus, responsible for any negligent acts committed by Mid-South. For the same reasons as discussed with regard to Count One, resolution of this claim will require reference to the agreement and is, thus, arbitrable.

In Count Two of the Complaint, the Plaintiffs purport to assert a res ipsa loquitur claim against Mid-South. "Res ipsa loquitur is a rule of evidence that, under certain conditions, allows the jury to infer negligence from the manner of the occurrence of the injury complained of, or the attendant circumstances." *Doyle v. RST Const. Speciality, Inc.*, 648 S.E.2d 664, 667 (Ga. App. 2006)(citation and quotations omitted). To establish a breach of duty under this doctrine, the plaintiff must establish that: (1) the injury ordinarily would not occur in the absence of negligence; (2) the injury was caused by an agent or instrument within the defendant's exclusive control; and (3) the injury was not due to any voluntary action or contribution on plaintiff's part. *Kmart Corp. v. Larsen*, 522 S.E.2d 763, 765 (1999).

In determining whether the doctrine should apply in this case, a court would be required to review the agreement to determine whether the injury was due to any voluntary action on the part of the Plaintiffs. Further, where a plaintiff pursues a negligence claim under the doctrine of res ipsa loquitur, he must still establish that the defendant owed the plaintiff some duty. 62 Am. Jur.2d Premises Liability § 57. Thus, for the same reasons discussed with regard to Count One, Count Two

of the Complaint falls within the scope of the arbitration clause. Likewise, for the same reasons, the Plaintiffs' assertion of a negligence claim against Mid-South Industries under the res ipsa loquitur doctrine contained in Count Four of the Complaint falls within the scope of the arbitration clause.

In support of their argument that the negligence claims are excluded from the arbitration clause, the Plaintiffs cite *Denali Flavors, Inc. v. Marigold Foods, L.L.C.*, 214 F.Supp.2d 784, 786 (W.D. Mich. 2002). In that case, the plaintiff ice-cream manufacturer sued a former licensee for trademark infringement and unfair competition, alleging that the former licensee was selling ice cream that was a "knock off" of the plaintiff's trademark.

The arbitration clause provided that "a dispute concerning this agreement, or either parties' responsibilities under the agreement. . . shall be submitted to arbitration." *Id*. at 785. The court determined that the manufacturing of "knock-off" brands was "specifically not within the contemplation of the Licensing Agreement." *Id*. at 787. Thus, "the trier of fact need not consult the terms of the contract to determine an appropriate remedy." *Id*. In this case, however, as discussed, the Plaintiffs' complain that the Defendants were negligent in carrying out their duty to deliver ice-maker kits to Electrolux. This duty arose under the agreement which contains the arbitration clause.

Because Electrolux's claims "relate to" the agreement, the Defendants' motion to compel its claims to arbitration must be granted.

   **C.**   **Whether this Court Should Determine Arbitrability.**

The Plaintiffs also cite *Bowden, et al. v. Delta T. Corp.*, 2006 WL 3412307 (E.D. Ky. 2006). In that case, the arbitration clause at issue provided that:

> [a]ny controversy or claim arising out of or related to this Agreement or the breach thereof shall be settled by arbitration, in accordance with the Rules of the American Arbitration Association. . . . .

*Id*. at *1.

> In declining to determine the scope of the arbitration clause, the court stated:
>
> When parties contract to settle claims related to a contract "according to the rules of the American Arbitration Association[,]" they provide a " 'clear and unmistakeable' delegation of scope-determining authority to an arbitrator" because the Rules of the American Arbitration Association provide "that the arbitrator shall have the power to rule on ... any objections with respect to the ... scope ... of the arbitration agreement." *E.g.*, *Sleeper Farms v. Agway, Inc.*, 211 F.Supp.2d 197, 200 (D.Me.2002) (quoting *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 203 F.R.D. 677, 685 (S.D.Fla.2001)) (other internal citations omitted); see also *Contec Corp. v. Remote Solution*, 398 F.3d 205, 208 (2d Cir.2005) (stating that when parties agree to arbitrate "in accordance with the Commercial Arbitration Rules of the American Arbitration Association[,]" that agreement "serves as clear and unmistakeable evidence of the parties' intent to delegate" issues of scope and validity to the arbitrator).

*Id*. at * 7; *see also*, *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006)(agreement that incorporates AAA Rules clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208  (2nd Cir. 2005)(because AAA Rules give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," the parties' incorporation of those rules evidences a clear and unmistakable intent to delegate the determination of arbitrability to an arbitrator); *Book Depot Partnership v. American Book* Co., 2005 WL 1513155, at *  (E.D. Tenn. 2005)(stating that a significant majority of courts have held that when an agreement "incorporates rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator" and assuming Sixth Circuit would agree).

Though neither party has discussed it, in this case also, the parties agreed to arbitrate "in accordance with the rules of the American Arbitration Association." Because under the AAA rules,

the arbitrator decides arbitrability, the Defendants' motion to compel Electrolux's claims to arbitration must also be granted on the basis that the parties agreed to arbitrate arbitrability.

> **D. Whether Equinox's Claim Against the Defendants Must be Arbitrated.**

The Plaintiffs argue that Equinox cannot be compelled to arbitrate because it was not a party to the agreement containing the arbitration clause. Again, Equinox was the insurance provider for Electrolux. The Complaint alleges that, pursuant to the insurance policy, Equinox has paid over $3 million to indemnify Plaintiff Electrolux for its losses in property damage and business interruption that resulted from the fire. Thus, Electolux asserts a subrogation action against the Defendants.

Under Georgia law,

> [S]ubrogation places the subrogee in the shoes of the subrogor. Consequently, the rights to which the subrogee succeeds are the same as, and no greater than, those of the subrogor; therefore, the subrogee's rights are subject to any limitations incident to them in the hands of the subrogor, and subject to any defenses that might have been urged against the subrogor.

*Franco v. Cox*, 594 S.E.2d 717, 720 (Ga. App. 2004).

The same is true under Kentucky law. *Sharp v. Bannon*, 258 S.W.2d 713, 715 (Ky. 1953); *Government Employees Ins. Co. v. Winsett*, 153 S.W.3d 862, 864 (Ky. App. 2004); *Acuity v. Planters Bank, Inc.*, 362 F.Supp.2d 885, 889 (W.D. Ky. 2005).

Thus, under either Georgia or Kentucky law, Equinox has the same right as Electrolux to pursue a negligence action against the Defendants. However, it also has the same limitations on that cause of action, including that actions relating to the agreement between Electrolux and Mid-South, or its breach, must be arbitrated. Accordingly, the Court will grant the Defendants' motion to compel Equinox's claims to arbitration.

**III.   CONCLUSION.**

For all these reasons, the Court hereby ORDERS as follows:

1) The Verified Motion by Defendants to Refer this Case to Arbitration (Rec. No. 9) is GRANTED;

2) The Verified Motion by Defendants to Refer this Case to Mediation (Rec. No. 9) is DENIED as moot; and

3) This matter is DISMISSED and STRICKEN from the active docket of this Court.

Dated this 11th day of August, 2008.

Signed By:
*Karen K. Caldwell*  KKC
United States District Judge